UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GLORIA SANDIFORD,

        Plaintiff,

vs.                                  Case No.  3:08-cv-294-J-MCR

MICHAEL J. ASTRUE,
Commissioner of  Social Security,

        Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits for the time period from September 24, 2001 through October 31, 2005.  The Court has thoroughly reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and the matter **REMANDED** for proceedings not inconsistent with this opinion.

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income payments on August 12, 2002 and July 22, 2002, respectively.  (Tr. 52, 3).  Plaintiff alleged disability as of September 24, 2001.  (Tr. 52).  Because Plaintiff was in pay status on a subsequent claim as of November 1, 2005, the relevant time period in

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 6).

this case is September 24, 2001, through October 31, 2005. (Tr. 373). On May 23, 2005, the Administrative Law Judge ("ALJ") issued a decision finding claimant had the following "severe" impairments: plantar fasciitis on the left, insulin dependent diabetes mellitus with neuropathy, bilateral carpal tunnel syndrome, right ulnar nerve entrapment of the elbow, hypertension, and hyperglycemia. (Tr. 18). However, the ALJ determined Plaintiff had the residual functional capacity to perform the full range of light work and was "not disabled" as defined by the Social Security Act. (Tr. 19). Plaintiff filed a request for review by the Appeals Council, which was denied. (Tr. 7). Therefore, the ALJ's decision became the final decision of the Commissioner. Thereafter, Plaintiff filed a civil action in this Court challenging the decision. On September 15, 2006, the district court remanded the case to the Commissioner with detailed instructions for further proceedings. (Tr. 467). The ALJ issued a second decision on August 31, 2007, in which he found Plaintiff had the same "severe" impairments. (Tr. 366). However, this time the ALJ found Plaintiff was only able to perform at sedentary levels of exertion. (Tr. 367). Accordingly, the ALJ determined from September 24, 2001 through October 31, 2005, Plaintiff was capable of performing her past relevant work as a tenant relations coordinator and was not under a disability as defined in the Social Security Act. (Tr. 372-373). The ALJ's second decision is the subject of this opinion.

## II. NATURE OF DISABILITY CLAIM

### A. Basis of Claimed Disability

Plaintiff alleges disability as of September 24, 2001, due to diabetes, high blood pressure, headaches, blurred vision, left sided numbness, foot pain, swelling, and hearing deficits. (Tr. 66, 87, 90, 104).

### B. Summary of Evidence Before the ALJ

Plaintiff was fifty-four years of age at the time of the ALJ's second decision.[2] Plaintiff completed high school and some college. (Tr. 324). Plaintiff's past relevant work experience includes employment as a warehouse worker, line worker, courthouse worker/paralegal, neighborhood coordinator, bank proof operator, and laborer. (Tr. 12).

#### 1. Medical Evidence

On July 26, 2001, Plaintiff presented to the emergency room at Shands[3] hospital complaining of dizziness and back pain. (Tr. 215). Plaintiff was diagnosed with hyperglycemia and hypertension. Id. On December 6, 2001, Plaintiff was seen again in the emergency room for irregular vaginal bleeding. (Tr. 213). Plaintiff was diagnosed with new onset diabetes and hypertension. Id. On July 25, 2002, Plaintiff was seen because of elevated blood pressure, breast pains, and blurred vision. (Tr. 161). Plaintiff was diagnosed with Gastric Esophageal Reflux Disease ("GERD"). Id.

---

[2]Plaintiff's date of birth was September 29, 1952. (Tr. 79). The date of the ALJ's second decision was August 31, 2007. (Tr. 374).

[3]Apart from Plaintiff's consultative examination, Plaintiff's treatment took place at Shands Jacksonville, where she was seen by several different doctors in a variety of departments.

On January 8, 2003, Josefino P. Bargas, M.D. performed a consultative evaluation of Plaintiff. (Tr. 136). Dr. Bargas recorded Plaintiff's chief complaints as poor vision and headaches. Id. Plaintiff presented with a history of diabetes which she had only been treating with medication for one year. Id. Dr. Bargas found Plaintiff had a history of recurrent vaginal yeast infections, failing visual acuity, pain and cramps in her whole body, a feeling of sluggishness, and dry mouth. Id. He also noted Plaintiff had a history of hypertension with headaches for three years. Id. Dr. Bargas noted Plaintiff reported her joints hurt and she was in pain all the time, but Plaintiff also stated she was able to stay on the computer for hours. (Tr. 137). Dr. Bargas noted Plaintiff was able to ambulate around the examination room and was not in any acute distress. Id. Dr. Bargas's physical examination of Plaintiff revealed 20/40 vision in her right eye and 20/30 in her left. Id. Plaintiff walked with good balance, posture, and gait and did not require assistive devices. Id. Dr. Bargas reported Plaintiff was able to lift 20 lbs., could use her hands to button her clothes, and could pick up objects from the floor. (Tr. 142). Plaintiff was unable to squat but she could bend. Id. Dr. Bargas diagnosed diabetes mellitus, hypertension, cataracts in each eye, and a history of GERD. Id.

On January 2, 2003, Plaintiff presented to the emergency room complaining of abdominal pain, nausea, and lethargy. (Tr. 195). Plaintiff was diagnosed with irritable bowel syndrome, GERD, pancreatitis, and kidney stone. (Tr. 196). On March 3, 2003, Plaintiff was seen for left foot pain and left side numbness. (Tr. 175). The attending physician diagnosed diabetic neuropathy. (Tr. 176). Evidence also indicates Plaintiff

was seen by an ophthalmologist a number of times in 2003. (Tr. 101). However, there are no records detailing the findings of those visits.

On January 2, 2004, Dr. Stephen Meritt noted Plaintiff had non-insulin dependent diabetes mellitus. (Tr. 268). When Plaintiff was seen on February 2, 2004, Dr. Juan G. Ochoa diagnosed weakness and chronic pain in Plaintiff's neck and limbs. Dr. Ochoa increased Plaintiff's dosage of Neurontin. (Tr. 259). Plaintiff saw Dr. Meritt again on June 10, 2004. (Tr. 245). Dr. Meritt diagnosed plantar fasciitis bilaterally in addition to insulin-dependent diabetes mellitus, with some neuropathic changes possible. Id. On July 19, 2004, a neurological examination revealed Plaintiff's muscle strength was 5/5 in her upper and lower extremities. (Tr. 242). Plaintiff had a negative rheumatoid factor, with a sedimentation rate of 37 and the CT scan of Plaintiff's brain was negative. Id. However, nurse practitioner, Janice Daniel, diagnosed diabetic neuropathy, bilateral carpal tunnel syndrome, and right ulnar nerve compression. Id.

On August 30, 2004, a neurophysiologic evaluation revealed there was electrophysiologic evidence of bilateral ulnar nerve entrapments at Plaintiff's elbows but not at her wrists. (Tr. 232). On September 8, 2004, Plaintiff was seen at the Podiatry Clinic. (Tr. 231). The attending doctor[4] found Plaintiff had a pronated gait with pain in the plantar aspect of the left heel, consistent with plantar fasciitis. Id. Plaintiff's sensation to sharp, dull, soft touch was somewhat diminished, although she had sharp, shooting pains occasionally and burning sensations consistent with neuropathic problems. Id. Plaintiff was diagnosed with plantar fasciitis on the left and insulin

_____

[4]The treatment record omits the name of the attending professional. (Tr. 231).

diabetes mellitus with some neuropathic changes.  Id.  Plaintiff received an injection in her left heel for temporary relief of pain.  Id.  The doctor also noted Plaintiff was unable to obtain support shoes due to a lack of financial resources.  Id.  Plaintiff hoped she would be able to get some assistance from the diabetes association to get the recommended shoes.  Id.

On October 12, 2004, Plaintiff was seen by a rheumatologist, Dr. Archana Goel, for chronic neck pain, swelling of her hands, legs, and feet, and morning stiffness.  (Tr. 312).  Plaintiff stated she had been aching all over in her joints and muscles for about a month.  Id.  Plaintiff's physical examination revealed generalized joint and muscle tenderness, full range of motion in all joints except hips, secondary to low back pain.  Id.  Plaintiff's muscle strength was 5/5, but her grip strength was slightly decreased.  Id.  The doctor found generalized musculoskeletal pain suggestive of fibromyalgia and diagnosed diabetic neuropathy, bilateral carpal tunnel syndrome, chronic sleep disturbance, and morbid obesity.  Id.  Dr. Goel noted a history of peptic ulcer disease, decreased Plaintiff's dosage of ibuprofen, and started her on Celebrex.  Id.  Dr. Goel also started Plaintiff on Tramadol, recommended that Plaintiff wear a brace for carpal tunnel syndrome, and referred Plaintiff for a sleep study.  Id.  Notably, the record includes an extensive list of medications which were prescribed for Plaintiff's ailments over the course of the relevant time period.  (Tr. 114 -130).

## 2.    Other Evidence

Plaintiff's first administrative hearing was held on November 11, 2004.  (Tr. 321).  Plaintiff testified she was unable to lift a gallon of milk.  (Tr. 327).  Plaintiff stated she

had sisters and a friend who helped her with shopping, fixing meals, laundry, and cleaning. (Tr. 328-329). Plaintiff indicated she did not take any pain medication the day of the hearing because it made her incoherent. (Tr. 332). Plaintiff testified the insulin and pills helped but did not control her sugar. (Tr. 334-335). Plaintiff testified she took medication for everything and she did a lot of sleeping. (Tr. 337). Plaintiff said she had seen a doctor about her eyesight and she was seeing a podiatrist who was giving her injections in her feet. Id. Plaintiff testified she had pains shooting from the back of her head, all the way down her left side and numbness in both hands due to the peripheral neuropathy. Id. Plaintiff indicated she experienced headaches as a result of her hypertension and the eye doctor said the pressure behind her eyes was too high. (Tr. 340). Plaintiff also stated hypertension and diabetes caused her to experience blurred vision. (Tr. 341).

Upon remand, a second administrative hearing was held on July 2, 2007. (Tr. 439). The ALJ asked Plaintiff to describe the nature of her responsibilities when she worked as a neighborhood coordinator. (Tr. 448). Plaintiff stated she had a "mound of paperwork." Id. Plaintiff testified she had to put copies of tenant association bylaws together for distribution at meetings. (Tr. 448-449). Plaintiff also indicated she went door to door and was responsible for encouraging tenants to form tenant associations, recruiting people for various positions, showing tenants how to apply for federal grant money, and helping them fill out paperwork. (Tr. 449). The Vocational Expert, Donna Mancini, found a job title in the Dictionary of Occupational Titles ("DOT"), tenant relations coordinator, which was similar to Plaintiff's past job as a neighborhood

coordinator.   (Tr. 450).  A tenant relations coordinator was listed as a skilled sedentary position.  Id.

Plaintiff testified she stopped working in September 2001, shortly after her eyesight "completely went away" while on the job.  (Tr. 451).  Plaintiff stated she was taken to the emergency room where she was diagnosed with mellitus diabetes.[5]  Id. Plaintiff testified prior to this incident, she sometimes experienced blind spots, dizziness, and headaches.  (Tr. 451).  Plaintiff stated her blood sugar levels were controlled with medication, but the insulin was very dangerous because it caused all the "bowels to pass out of her body" and caused her to fall into a deep sleep.  (Tr. 454).

Plaintiff testified her doctors prescribed 900 milligrams of Neurontin, to be taken three times per day, for the tingling and numbness and Lortabs for pain.  (Tr. 454). Plaintiff testified her entire body ached and she was unable to lift or carry her briefcase or the board and easel she needed for meetings.  (Tr. 456).  Plaintiff stated she was unable to sit for more than 30 minutes during the relevant time period and even if she had been able to work at a job which allowed her to change positions and stretch regularly, the pain would have affected her concentration.  (Tr. 457).  Plaintiff testified her medications made her drowsy and she would sleep most of the day.  Id.  Plaintiff stated she was unable to do household chores and had daily headaches.  (Tr. 458). Plaintiff testified she was bedridden in 2002 and 2003 from her medications.  (Tr. 459). Because of Plaintiff's reports of pain in her finger joints, the ALJ questioned Plaintiff

---

[5]The medical records show an ER visit in July 2001, where Plaintiff complained of dizziness and back pains.  (Tr. 213).  Plaintiff was diagnosed with abnormal vaginal bleeding and new onset diabetes at an ER visit in December 2001.  (Tr. 215).

about her statement to Dr. Bargas in December of 2002, in which Plaintiff indicated she was able to "stay with the computer for hours." (Tr. 460). Plaintiff responded by stating she was not at work during that time and was not using a home computer. Id. Plaintiff testified she was unable to use her hands or do anything during that time. (Tr. 459). The Vocational Expert opined Plaintiff's past work as a neighborhood coordinator appeared consistent with that of a tenant relations coordinator as listed in the DOT. (Tr. 461, 464).

## C.    Summary of the ALJ's Decision

A claimant is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limits her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual

functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287, 2294 n.5 (1987).

In the ALJ's second decision, dated August 31, 2007, he determined Plaintiff met the insured status requirements of the Social Security Act through September 30, 2003. (Tr. 366).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity at any time relevant to the ALJ's final decision.  Id.  At step two, the ALJ determined Plaintiff had the following 'severe' impairments within the meaning of the Regulations, from September 24, 2001, the alleged date of onset, through October 31, 2005: plantar fasciitis on the left, insulin dependent diabetes mellitus with neuropathy, bilateral carpal tunnel syndrome, right ulnar nerve entrapment of the elbow, hypertension, and hyperglycemia.  (Tr. 361).  The ALJ determined none of Plaintiff's impairments, either singly or in combination, were 'severe' enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).  (Tr. 367).  However, Plaintiff's impairments were found "to cause significant limitation in the claimant's ability to perform basic work activities."  (Tr. 366).  The ALJ found Plaintiff retained the residual functional capacity to "lift and carry a maximum of 10 pounds, stand and/or walk 2 to 4 hours during and 8-hour workday, and sit at least 6 hours during an 8-hour workday." (Tr. 367).

The ALJ concluded Plaintiff's "testimony in general [lacked] sufficient indicia of credibility to be accorded much weight." (Tr. 369). The ALJ pointed to statements Plaintiff made which he found inconsistent with the records. The ALJ determined the inconsistencies reflected poorly on Plaintiff's credibility as a whole. (Tr. 371). Specifically, the ALJ pointed to a December 2001 statement in which Plaintiff indicated the problem with her eyesight had "completely gone away." (Tr. 370). It appears the ALJ found that statement inconsistent with Plaintiff's claims of disability due to blurred vision. (Tr. 370). The ALJ also highlighted the conflict between Plaintiff's complaints of joint pains in her fingers and her statement to Dr. Bargas that she spent her leisure time sitting at the computer for hours. (Tr. 371). The ALJ pointed out that when Plaintiff was questioned about the time she spent at the computer, she denied using the computer and stated she was bedridden at that time. Id. The ALJ discussed the fact that a physical examination conducted around the same time showed Plaintiff was able to ambulate around the examination room, was not in any acute distress, walked with good posture, gait, and balance, and had a symmetrical arm swing. Id. Overall, the ALJ concluded the objective findings of Plaintiff's treating sources failed to support Plaintiff's allegations in terms of the nature, magnitude, and intensity of her complaints. (Tr. 371-372).

At step four, the ALJ utilized the testimony of an impartial vocational expert ("VE") to determine whether Plaintiff could perform any of her past relevant work through her date last insured. (Tr. 373). In comparing Plaintiff's RFC with the physical and mental demands of a tenant relations coordinator, the ALJ found Plaintiff was able

to perform that job as it is generally performed in the national economy.  Accordingly, the ALJ found Plaintiff was not under a "disability" within the meaning of the Social Security Act at any time from September 24, 2001 through October 31, 2005.  Id.

## III.    STANDARDS OF LAW

### A.    The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420,1422 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401, 91 S.Ct. at 1427).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as the finder of fact, and even if the reviewer finds the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837

(11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## IV.    ANALYSIS

Plaintiff argues two issues on appeal.  First, Plaintiff argues the ALJ failed to follow the remand instructions of this Court, which required that he discuss Plaintiff's non-exertional limitations and provide a more detailed discussion of Plaintiff's RFC. (Doc. 12, p. 16).  Plaintiff contends the ALJ's failure to follow the Court's instructions requires the case be remanded.  Id.  Second, Plaintiff argues the ALJ failed to adequately explain why he found Plaintiff's testimony concerning her non-exertional limitations "not credible."  (Doc. 12, p. 12).  Specifically, Plaintiff contends the ALJ did not explain why Plaintiff's testimony that her medications made her incoherent, that she experienced difficulties with her vision due to her diabetes, and that she experienced significant limitations in the use of her upper extremities was not believable.  (Doc. 12, p. 16).  Accordingly, Plaintiff requests this Court remand her claim for additional proceedings.

### A.    The district court's remand instructions and the ALJ's re-assessment of Plaintiff's RFC

When specific instructions have been provided in a remand order, whether that remand order is issued by the Appeals Council or the federal court, the ALJ must do as it instructs.  See Warren-Ward v. Astrue, No. 1:07-cv-811-TFM, 2008 WL 2397390, at *3 (M.D. Ala. June 10, 2008).  However, upon remand, the ALJ is not bound by his earlier decision.  See Miller v. Barnhart, 175 Fed. Appx. 952, 955 (10th Cir. 2006).  The ALJ is encouraged to review "the record on remand, check[] initial findings of fact and

-13-

mak[e] corrections, if appropriate." Id. at 955-56 (citing Campbell v. Bowen, 822 F.2d 1518, 1522 (10th Cir. 1987)). Nonetheless, an ALJ commits legal error by not following the mandate of the court. Bolen v. Astrue, No. CA 07-0516-C, 2008 WL 694712, at *3 (S.D. Ala. Mar. 12, 2008) (citing Thompson v. Barnhart, No. Civ. A. 05-395, 2006 WL 709795, at *11-12 (E.D. Pa. Mar. 15, 2006)). See also Tauber v.Barnhart, 438 F. Supp. 2d 1366, 1375-1376 (N.D. Ga. 2006) (holding error was committed because the ALJ failed to consider "sit/stand" option required by the Appeals Council's remand order).

In the first decision, dated May of 2005, the ALJ found Plaintiff was "not disabled" because while objective medical evidence established Plaintiff had severe impairments, pain, and limitations, Plaintiff had the RFC to perform light work. (Tr. 16, 19). The ALJ determined Plaintiff was able to stand and/or walk 6 hours and sit 6 hours in an 8-hour work-day, lift and/or carry 20 pounds occasionally, and lift and/or carry 10 pounds frequently. (Tr. 19). The ALJ did not list any non-exertional limitations. In remanding the case, Judge Snyder found where non-exertional impairments were suggested by the ALJ's findings of severe impairments, the ALJ should have specifically addressed Plaintiff's non-exertional capacities and provided a more detailed discussion of Plaintiff's RFC. (Tr. 476 - 477). Judge Snyder instructed the ALJ to "re-evaluate [Plaintiff's] RFC in accordance with SSR 96-8p." (Tr. 477).

In the second decision, dated August 31, 2007, the ALJ found the same severe impairments caused "significant limitations in [Plaintiff's] ability to perform basic work activities." However, in the second decision the ALJ found Plaintiff was only able to lift/carry 10 pounds, stand/walk 2 to 4 hours in an 8-hour workday, and sit at least 6

hours during an 8-hour workday.  (Tr. 367).  Accordingly, the ALJ changed his RFC finding and concluded Plaintiff could perform at the sedentary level of exertion.  Id.  The ALJ did not include a discussion of non-exertional limitations.  Instead, the ALJ provided a review of Plaintiff's diagnoses, focusing primarily on objective evidence that indicated Plaintiff retained the muscle strength and range of motion in her extremities.  (Tr. 371-372).  The ALJ stated his RFC finding was based on a consideration of the entire record, including all of Plaintiff's statements and the extent to which they were consistent with objective medical evidence.  (Tr. 367).

Plaintiff contends despite the fact that the ALJ changed his reasoning as to why Plaintiff was ultimately "not disabled," he was still required to provide a more detailed discussion of Plaintiff's RFC as instructed.  (Doc. 12, p. 14).  Plaintiff alleges the ALJ failed to provide the function by function assessment required by SSR 96-8p and to explain why Plaintiff's "severe" impairments did not result in any non-exertional limitations.  (Doc. 12, p. 12-14).  Specifically, Plaintiff argues a proper function-by-function assessment should have included a discussion of Plaintiff's (1) ability to push, pull, reach, handle, and finger and (2) vision difficulties, before determining her ultimate RFC.  (Doc. 12, p. 14).  Plaintiff contends it was imperative that the ALJ perform a function by function assessment of Plaintiff's ability to reach, handle, finger, and see up close because work as a tenant relations coordinator would require such non-exertional activities and Plaintiff testified to having difficulty with each of them.  (Doc. 12, p. 15).  Furthermore, Plaintiff argues limitations with regard to vision, medication side effects, and upper extremities, are limitations that could reasonably be found in a person, like

Plaintiff, with the "severe" impairments of diabetic neuropathy, bilateral carpal tunnel syndrome, and ulnar nerve entrapment.  Id.

The Commissioner argues the ALJ's RFC finding is supported by substantial evidence and the ALJ provided a thorough statement of Plaintiff's functional abilities which satisfied the requirements of SSR 96-8p.  (Doc. 13, p. 6).  The Commissioner argues the ALJ was not required to specifically discuss Plaintiff's ability to push or pull where Plaintiff did not allege any such limitation and the record does not show she had any limitation in her ability to push or pull.  (Doc. 13, p. 6).

The RFC is an assessment based on all the relevant evidence of a claimant's remaining ability to work despite her impairments.  20 C.F.R. § 404.1545(a); Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).  In evaluating a claimant's RFC, the ALJ is required to consider all of the claimant's impairment, including the subjective symptoms.  Id.  SSR 96-8p provides:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945.  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. 1996).  In doing so, the assessment must address both the remaining exertional and non-exertional limitations of the claimant. SSR 96-8p, at *5; Stanton v. Astrue, No. 3:07-cv-477-J-TEM, 2008 WL 4456753, at *11 (M.D. Fla. Sept. 30, 2008) (citing SSR 96-8p).  The purpose of the function-by-function assessment requirement is to ensure that the ALJ does not overlook some of the

claimant's limitations and erroneously determine a claimant's exertional level of work. SSR 96-8p, at *4. A proper RFC assessment must also include a narrative discussion of the ways in which the evidence supports each conclusion, citing medical findings and non-medical observations. SSR 96-8p, at *7.

While the ALJ discusses Plaintiff's alleged limitations in her extremities to some extent, the ALJ completely omits a discussion of Plaintiff's alleged vision problems. In so doing, the Court finds the ALJ overlooked an area of limitation that had the potential to affect Plaintiff's RFC. On remand, Judge Snyder directed the ALJ to provide a more detailed discussion of Plaintiff's RFC and noted the ALJ's error in not specifically including a discussion of Plaintiff's non-exertional capacities, stating "[a] proper RFC assessment 'must address both the remaining exertional and non-exertional capabilities of the individual." Sandiford v. Barnhart, No. 3:05-cv-1174, at *10 (M.D. Fla. Aug. 15, 2006) (citing Southard v. Barnhart, 72 Fed. Appx. 781, 784 (10th Cir. 2003) (quoting SSR 96-8p)). Here again, the Court finds by not specifically discussing Plaintiff's non-exertional limitations or lack thereof, the ALJ did not conduct a proper RFC analysis. Furthermore, the undersigned finds where some of Plaintiff's severe impairments suggested the potential for non-exertional restrictions in Plaintiff's vision[6], the ALJ should have included some discussion of Plaintiff's RFC in this area. Record evidence shows Plaintiff's consultative physician, Dr. Bargas, diagnosed cataracts in each eye.

---

[6]Ruling 96-9 indicates a non-exertional limitation is an impairment caused limitation which affects such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling. SSR 96-9p, 1996 WL 374185, at *5 (S.S.A. 1996). "Non-exertional limitations may or may not significantly narrow the range of work a person can do." SSR 83-14, 1983 WL 31254, at *1 (S.S.A. 1983).

(Tr. 142).  The record also provides documentation of Plaintiff's recurring complaints of vision difficulties and evidence Plaintiff was seen by a vision specialist numerous times. (Tr. 101).  Accordingly, the undersigned finds the ALJ failed to comply with the district court's remand instruction, requiring a re-assessment of Plaintiff's RFC in accordance with SSR 96-8p. Thus, this case must again be remanded.

### B.      The ALJ's re-evaluation of Plaintiff's subjective complaints

Pain is a non-exertional impairment.  Foote, 67 F.3d at 1559.  The ALJ must consider *all* of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528 (emphasis added).  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).  When an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be

obvious as to the credibility finding. <u>Jones v. Dep't of Health & Human Servs.</u>, 941 F.2d 1529, 1532 (11th Cir. 1991) (stating reasons must be based on substantial evidence); <u>see</u> <u>also</u> <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1212 n.4 (11th Cir. 2005) (holding precedent in the Eleventh Circuit requires "explicit articulation of the reasons justifying a decision to discredit a claimant's subjective pain testimony"). As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. <u>Foote</u>, 67 F.3d at 1561-62; <u>Cannon v. Bowen</u>, 858 F.2d 1541, 1545 (11th Cir. 1988). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1054 (11th Cir. 1986).

In considering the first prong of the pain standard, the ALJ found plantar fasciitis on the left, insulin dependent diabetes mellitus with neuropathy, bilateral carpal tunnel syndrome, right ulnar nerve entrapment of the elbow, hypertension, and hyperglycemia were underlying medical conditions that could reasonably be expected to produce Plaintiff's pain and other symptoms. (Tr. 366, 368). When applying the second prong of the pain standard, in the first decision, the ALJ determined Plaintiff's testimony was not entirely credible because Plaintiff's treatment had been routine, conservative, and successful in controlling her impairments, Plaintiff showed no signs of pain or discomfort while testifying, and no treating or examining physician opined Plaintiff was disabled by work-related restrictions. (Tr. 16-17). On appeal, the district court found the ALJ had applied erroneous legal standards and had failed to consider the SSR 96-7p factors. (Tr. 471 - 474). Judge Snyder instructed Plaintiff to re-assess Plaintiff's subjective

complaints. (Tr. 477). When applying the second prong of the pain standard in the second decision, the ALJ discredited Plaintiff's testimony because of alleged inconsistencies between Plaintiff's statements and record evidence. (Tr. 369 - 372). Additionally, the ALJ found the objective findings from Plaintiff's doctors did not support her allegations. (Tr. 372). The ALJ found Plaintiff's allegations of pain and other symptoms were not credible, based on a consideration of the entire record. (Tr. 372).

Plaintiff argues while the ALJ addressed some of Plaintiff's testimony, the ALJ failed to offer an adequate explanation as to why he disregarded Plaintiff's testimony that her medications make her incoherent or drowsy, that she experiences difficulties with her vision because of her diabetes, and that she experiences significant functional limitations in the use of her upper extremities. (Doc. 12, p. 16). Plaintiff also contends the ALJ failed to adequately explain why he discredited her testimony as a whole. Id. The Commissioner argues while Plaintiff offered numerous complaints and was diagnosed with various conditions, she failed to provide evidence, medical or otherwise, that she was as limited as she claimed. (Doc. 13, p. 8). The Commissioner also contends the medical records from doctors who examined and treated Plaintiff did not reflect objective findings that support Plaintiff's complaints. Id.

The Court must determine whether the reasons the ALJ articulated for discrediting Plaintiff's testimony are adequate and supported by substantial evidence. MacGregor, 786 F.2d at 1054. Social Security Ruling 96-7p explains allegations of a claimant's pain and limitations cannot be "disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 374186, at *1 (July

2, 1996).  The regulations require that the ALJ consider several factors including how the alleged symptoms and pain affect the claimant's daily activities, the effects and side effects of any medication used, and other measures used to alleviate claimant's pain or symptoms.  However, there is no requirement that the ALJ explicitly discuss each of the 96-7p factors.  See French v. Massanari, 152 F. Supp. 2d 1329, 1338, n.6 (M.D. Fla. 2001) (holding "it is not reversible error that the administrative law judge did not expressly mention the side effects of [the plaintiff's] medications in his credibility determination"); Bechtold v. Massanari, 152 F. Supp. 2d 1340, 1349, n.9 (M.D. Fla. 2001), aff'd, 31 Fed. Appx. 202 (11th Cir. 2001) ("In the Eleventh Circuit, there is no requirement that all seven of these factors be discussed explicitly.").  Nevertheless, the ALJ's credibility finding cannot be a "broad rejection."  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).  In determining the credibility of a claimant's statements, the ALJ must consider the entire case record and articulate his findings so as to "make clear to the individual and to any subsequent reviewers, the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, at *1; See Harris v. Astrue, No. 07-22334-CIV, 2008 WL 4725194, at *6 (S.D. Fla. Oct. 24, 2008) (affirming clearly articulated credibility finding based on clinical data, testimony, demeanor at the hearing, medications, daily activities, and motivations).  In making his credibility determination, the ALJ is also allowed to consider inconsistencies between a claimant's subjective complaints and the evidence of record.  See McCray v. Massanari, 175 F. Supp. 2d 1329, 1338 (M.D. Ala. 2001) (stating ALJ entitled to consider inconsistencies in the record when evaluating a claimant's credibility).

In the second decision, it seems the ALJ did not place much weight on Plaintiff's testimony about her vision difficulties because he heard Plaintiff testify "she stopped working in December 2001 due to a problem with her eyesight, *which completely went away*." (Tr. 370). However, upon review the Court finds Plaintiff actually indicated she stopped working after one instance in which "her eyesight completely went away." (Tr. 451). Plaintiff did not say the problem with her eyesight had completely gone away. The Court finds the ALJ's analysis of the record material in light of Plaintiff's allegations of eyesight limitations which could potentially affect her ability to work. Accordingly, the ALJ's error weighs against holding that the credibility finding is supported by substantial evidence. Nevertheless, the ALJ also highlighted the conflict between Plaintiff's report to consultative physician, Dr. Bargas, on December 31, 2002, that she could stay on the computer for hours, and Plaintiff's testimony that she was not able to do anything with her hands in 2002 and 2003 because of joint pain. (Tr. 137, 458, 459). The ALJ stated despite Plaintiff's claims of being bedridden in December of 2002, Plaintiff was able to walk with good balance, had good gait, good posture, symmetrical arm wing, and was able to ambulate around the examination room.[7] (Tr. 139, 141).

The Court finds while the inconsistency concerning Plaintiff's ability to stay on the computer for hours provides an adequate explanation for why the ALJ found Plaintiff's testimony about the use of her upper extremities not credible, it is not sufficient to discredit Plaintiff's entire testimony. In light of the ALJ's misunderstanding of Plaintiff's testimony about her eyesight and evidence that tends to corroborate Plaintiff's

---

[7]Notably, Plaintiff testified she was bedridden because of her medications, not because of joint pain or pain in her extremities. (Tr. 459).

allegations of vision problems,[8] the Court finds the ALJ's credibility finding is not supported by substantial evidence.

Furthermore, upon review of the record, the Court finds there is evidence that would tend to support Plaintiff's allegations regarding difficulty with her medication. For example, on February 19, 2002, Plaintiff presented to Shands emergency room with a bad reaction to medication. (Tr. 212). At Plaintiff's first hearing, despite her pain, Plaintiff stated she did not take her medication because it made her incoherent. (Tr. 332). On July 19, 2004, Plaintiff reported to Dr. Daniel of the Shands Department of Neurology that the Neurontin was affecting her memory and cognitive abilities. (Tr. 241). With respect to Plaintiff's allegations of being bedridden from her medications, the Court takes judicial notice that Neurontin and other medications prescribed for Plaintiff, can cause side effects such as dizziness, drowsiness, blurred vision, and cognitive problems, all of which Plaintiff complained of. See Doss v. Barnhart, 247 F. Supp. 2d 1254 (N.D. Ala. 2003) (holding the ALJ erred in failing to take effects of claimant's medication into consideration despite absence of medical evidence of side effects, where the court took judicial notice that the claimant's medication caused the side effects of which Plaintiff complained). While there is no requirement the ALJ discuss all of the SSR 96-7p factors,[9] in light of the evidence, the Court finds the ALJ should have

---

[8]The record reflects Plaintiff's recurring complaints of blurred vision, (Tr. 161, 312), headaches (Tr. 137, 294), dizziness (Tr. 215), diagnoses that include cataracts in each eye (Tr. 143), and evidence of multiple visits to the ophthalmologist. (Tr. 101).

[9]In remanding the ALJ's first decision for reconsideration of Plaintiff's credibility, Judge Snyder noted the ALJ's credibility analysis omitted a discussion of Plaintiff's daily activities despite SSR 96-7p's requirement that an individual's daily activities be considered when assessing the credibility of an individual's statement. See Sandiford v. Barnhart, Case no.3:05cv1174-HTS (M.D.
(continued...)

included a discussion of the effects of Plaintiff's medications in his credibility analysis.

The undersigned finds the ALJ failed to address relevant SSR 96-7p factors in his

second decision. Accordingly, the Court finds the ALJ's credibility finding is not

supported by substantial evidence.

## V.    CONCLUSION

While the ALJ is not required to detail every bit of evidence in his decision, the

Court finds the ALJ's second decision "is not enough to enable [this court] to conclude

that [the ALJ] considered [Plaintiff's] condition as a whole." Dyer, 395 F.3d at 1211.

Accordingly, the decision of the Commissioner is **REVERSED and REMANDED**

pursuant to sentence four of 42 U.S.C. § 405(g). The Commissioner shall conduct a de

novo hearing, and properly address 1) Plaintiff's testimony and credibility in accordance

with SSR 96-7p,  2) re-assess Plaintiff's RFC, specifically including a discussion of

Plaintiff's non-exertional limitations or stating why he finds Plaintiff has no non-exertional

limitations, and 3) conduct any other proceedings deemed necessary.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby

granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for

authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days

subsequent to the receipt of a notice of award of benefits from the Social Security

Administration. This order does not extend the time limits for filing a motion for

attorney's fees under the Equal Access to Justice Act.

---

[9](...continued)
Fla. Aug. 15, 2006)(quoting SSR 96-7p).  The ALJ's second decision also omits a discussion of
Plaintiff's daily activities.  The Court notes in this regard, the ALJ also failed to follow the remand
instructions of the district court.

The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this __23rd__ day of June, 2009.

*Monte C. Richardson*
_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record